UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

VANESSA COLANGELO,

                Plaintiff,

              -v-                  6:23-CV-1464 (DNH/ML)

HAMILTON COLLEGE,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                OF COUNSEL:

WARD ARCURI LAW FIRM      ZACHARY C. OREN, ESQ.
Attorneys for Plaintiff
185 Genessee Street, Suite 1201
Utica, NY 13501

FESTINE NELSON LLP         KATHRYN M. FESTINE, ESQ.
Attorneys for Plaintiff
258 Genessee Street, Suite 307
Utica, NY 13502

BOND SCHOENECK & KING,    COLLIN M. CARR, ESQ.[1]
    PLLC                  SUZANNE M. MESSER, ESQ.
Attorneys for Defendants     JONATHAN B. FELLOWS, ESQ.
One Lincoln Center
Syracuse, NY 13202


DAVID N. HURD
United States District Judge

---

   [1] Collin Michael Carr is listed as lead attorney in this matter but is also shown on the docket as an attorney in Syracuse University's Office of University Counsel.  While no notice of withdrawal was filed in this matter, the Clerk is directed to terminate this attorney from the case.

## DECISION and ORDER

### I. INTRODUCTION

On November 21, 2023, plaintiff Vanessa Colangelo ("Colangelo") filed this employment discrimination action against defendants Hamilton College ("Hamilton"), Karen Leach, Roger Wakeman, Lucy Burke, Nathan Goodale, Jeff Landry, Lisa Magnarelli, Terry Martinez, Adina Mujic, Joe Shelley, Steve Stemkoski, Caz Ullem, and David Wippman alleging violations of her rights under Title VII of the Civil Rights Act of 1964 ("Title VII") and the New York State Human Rights Law ("NYSHRL").[2] *See* Compl., Dkt. No. 1.

On August 29, 2025, Hamilton moved for summary judgment. Hamilton's Mot. Summ. J., Dkt. No. 64. That motion has been fully briefed and will be considered on the basis of the submissions and without oral argument. Dkt. Nos. 1, 64, 77, 81.

### II. BACKGROUND

On August 10, 2015, plaintiff, a female, was hired by Hamilton as the Assistant Director of Visual Communications. Pl.'s Reply to Def's SOMF, Dkt. No. 77-20 ¶¶ 69–71. Since the beginning of the COVID-19 pandemic in

---

[2] The parties have stipulated to the dismissal of defendants Karen Leach, Roger Wakeman, Lucy Burke, Nathan Goodale, Jeff Landry, Lisa Magnarelli, Terry Martinez, Adina Mujic, Joe Shelly, Steve Stemkoski, Caz Ullem, and David Wippman (collectively the "Individual Defendants"), which was approved, leaving Hamilton as the sole remaining defendant. Dkt. Nos. 19, 23.

March 2020, plaintiff worked from home without incident and was never disciplined by defendant throughout her employment for her work performance. *Id.* ¶¶ 72, 75, 77. Thereafter, Colangelo became pregnant and notified Hamilton of her pregnancy in April of 2021. *Id.* ¶¶ 78–79. On July 7, 2021, Hamilton announced they would be implementing a mandatory COVID-19 vaccination policy (the "Policy") under which all employees were required to receive the COVID-19 vaccination by August 26, 2021, and that employees who believed they qualified for a medical or religious exemption could contacted Human Resources ("HR"). *Id.* ¶ 80; see also Colangelo Aff., Dkt. No. 77-1 at 16–18.[3] This July 7, 2021 announcement of the Policy did not state that the deadline for submitting accommodation requests was August 2, 2021. *Id.* ¶ 80–81; Dkt. No. 77-1 at 16–18. On July 13, 2021, plaintiff sent an e-mail to Hamilton's HR director, Stephen Stemkoski ("Stemkoski") regarding the Policy. *Id.* ¶ 82. Notably, plaintiff contends that Stemkoski only wanted to speak with the plaintiff by phone. *Id.* ¶ 83.

On July 28, 2021, plaintiff discovered that Hamilton had apparently imposed an August 2, 2021 deadline for submitting accommodation requests. *Id.* ¶ 84; *see also* Leach Decl. Ex. B, Dkt. No. 64-3 at 2–3. This left Colangelo with three days to both prepare and submit an accommodation request. *Id.*

---

[3] Pagination corresponds with CM/ECF headers.

¶¶ 85–87.  On August 2, 2021, plaintiff was informed by her physician that he would not write a doctor's note on her behalf in support of medical accommodation.  *Id.* ¶ 88.

The next day, plaintiff called Karen Leach ("Leach"), Hamilton's Vice President of Administration and Finance.  *Id.* ¶ 90.  It was Colangelo's preference to continue working from home until she went on maternity leave, after which she intended to obtain the vaccine and return to campus.  *Id.* During this call, plaintiff told Leach that her immediate supervisor supported her desire for an accommodation.[4]  *Id.* ¶ 91.  And plaintiff argues that Leach was "receptive of this reasonable request […] because she told [plaintiff] it was reasonable."  *Id.* ¶ 92.  Leach advised Colangelo to write a letter to Hamilton's COVID-19 Task Force Committee (the "Committee") detailing what their discussion.  *Id.* ¶ 93.

The following day, plaintiff emailed Leach her request for medical accommodation.  *Id.* ¶ 94.  This request was routed to Stemkoski, who then informed plaintiff by phone on August 17, 2021 that the Committee had denied her request.  *Id.* ¶ 101–03.  During this call, Stemkoski told plaintiff that "President Wippman is not making any accommodations for anyone for

---

[4]  Plaintiff's supervisor, Melissa Richards ("Richards"), approved plaintiff's request for an accommodation.  Pl.'s Rep. to Def.'s SOMF ¶¶ 97–98.  In addition, plaintiff argues that Hamilton's President was also supportive of her accommodation and that in his deposition "he acknowledged that both Melissa Richards and himself approved of [p]laintiff's request for an accommodation.  *Id.* ¶ 99.

the mandatory vaccination policy and that Plaintiff would have to get vaccinated." *Id.* ¶ 104.

In response to defendant's denial, Colangelo decided to pursue accommodation on religious grounds instead. *Id.* ¶ 105. Plaintiff did not initially request religious accommodation under the Policy because she believed her medical accommodation request would be granted. *Id.* Nonetheless, plaintiff' asserts she held a sincere religious belief that medical treatment be as minimally invasive as possible. *Id.* ¶¶ 107, 121. On August 19, 2021, plaintiff received a certificate from a church and completed defendant's religious accommodation form, which required supporting documentation. *Id.* ¶ 106. Colangelo then submitted this request to Stemkoski by way of two separate emails dated August 20, 2021 and August 22, 2021. *Id.* ¶ 106.

On August 24, 2021, Stemkoski called plaintiff to inform her that her request for religious accommodation was also denied as untimely. *Id.* ¶ 111. The following day, plaintiff's employment at Hamilton was terminated. *Id.* ¶ 11. She contends that Hamilton's denials of her medical and religious accommodation requests were not made in writing, that her termination was never put in writing, and that she was not provided an opportunity to go before the Committee with respect to her requests — an opportunity she contends was provided to other applicants. *Id.* ¶¶ 112–116.

In support of her discrimination claims, Colangelo points to certain comparator employees at Hamilton who *were* accommodated on other medical grounds and asserts that, aside from her own submission, every other request for accommodation that was submitted to the Committee on medical grounds was granted. *Id.* ¶¶ 127–28. First, comparator employee EE5[5] was accommodated after submitting a doctor's note citing allergies but no greater factual detail than plaintiff's submission included. *Id.* ¶¶ 130–31. EE5 was permitted to work from home thereafter. *Id.* ¶ 132. Comparator EE6 was also accommodated by defendant when they submitted a doctor's note citing a hip replacement and were permitted to delay their vaccination until after they received hip surgery. *Id.* ¶¶ 133–35. Next, comparator EE9 submitted a successful medical accommodation request to the Committee. *Id.* ¶¶ 136–37. As to that employee, plaintiff takes issue with defendant's failure to produce any doctor's notes supportive of that request for medical accommodation. *Id.*

Plaintiff has also detailed certain comparator employees who sought religious accommodation under the Policy. *Id.* ¶ 139. Colangelo asserts that five comparators successfully obtained a religious accommodation from the Policy, while only one other employee aside from plaintiff was denied. *Id.* ¶¶ 139–40. Even further, plaintiff argues that the only other employee who was

---

[5] Plaintiff refers to the comparator employees using pseudonyms, e.g., EE5, EE6, EE9.

denied a religious accommodation, EE1, was unsuccessful only because he failed to appear before the Committee "to discuss his religious beliefs." *Id.* ¶ 141.  Conversely, while other employees who succeeded in obtaining a religious accommodation were permitted to meet with the Committee, plaintiff was not.  *Id.* ¶ 142.

Colangelo's twelve-count action against Hamilton brings claims for: 1) discriminatory discharge on the basis of sex and/or pregnancy in violation of Title VII; 2) failure to accommodate on the basis of sex and/or pregnancy in violation of Title VII; 3) retaliatory discharge on the basis of sex and/or pregnancy in violation of Title VII; 4) discriminatory discharge on the basis of religion in violation of Title VII; 5) failure to accommodate on the basis of religion in violation of Title VII; 6) retaliatory discharge on the basis of religion in violation of Title VII; 7) discriminatory discharge on the basis of sex and/or pregnancy in violation of the NYSHRL; 8) failure to accommodate on the basis of pregnancy in violation of the NYSHRL; 9) retaliatory discharge on the basis of sex and/or pregnancy in violation of the NYSHRL; 10) discriminatory discharge on the basis of religion in violation of the NYSHRL; 11) failure to accommodate on the basis of religion in violation of the NYSHRL; 12) retaliatory discharge on the basis of religion in violation of the NYSHRL.  Compl., Dkt. No. 1 at 10–21.

## III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure ("Rule") 56, summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *McCutcheon v. Colgate-Palmolive Co.*, 62 F.4th 674, 686 (2d Cir. 2023) (quoting *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017)).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Hilton v. Wright*, 928 F. Supp. 2d 530, 544 (N.D.N.Y. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "In reviewing the motion, the district court must 'draw all reasonable inferences against the party whose motion is under consideration.'" *Lake v. HealthAlliance Hosp. Broadway Campus*, 738 F. Supp. 3d 208, 215 (N.D.N.Y. 2024) (quoting *Williams v. MTA Bus Co.*, 44 F.4th 115, 125 (2d Cir. 2022)). But "[a] question of material fact does not exist merely because plaintiff disagrees with the deposition testimony and documentary evidence produced by defendant[s]." *Turner v. Delta Airlines, Inc.*, 658 F. Supp. 3d 123, 131 (E.D.N.Y. 2023) (citing *Anderson*, 477 U.S. at 247–48).

After a moving party carries its burden under Rule 56(c), its opponent then "must provide more than conclusory allegations … and show more than

some metaphysical doubt as to the material facts." *See Vista Food Exch., Inc. v. Comercial De Alimentos Sanchez S De R L De C.V.*, 147 F.4th 73, 85 (2d Cir. 2025) (quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 20210)).  Instead, "[t]he non-moving party 'must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact.'" *Murrell v. Moscicki*, 790 F. Supp. 3d 213, 220 (W.D.N.Y. 2025) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)).  "Indeed, 'the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.'" *Campbell v. Belgard*, 765 F. Supp. 3d 234, 241 (W.D.N.Y. 2025) (quoting *Anderson*, 477 U.S. at 247–48).

"In sum, the ultimate test 'is whether the evidence can reasonably support a verdict in plaintiff's favor.'" *Waltman v. United Servs., Inc.*, 635 F. Supp. 3d 86, 98–99 (D. Conn. 2022) (quoting *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 157 (2d Cir. 2000)).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Waltman*, 635 F. Supp. 3d at 99 (quoting *Baez v. JetBlue Airways Corp.*, 793 F.3d 269, 274 (2d Cir. 2015)).

## IV.  <u>DISCUSSION</u>

Hamilton has moved for summary judgment, arguing that: 1) plaintiff's Title VII and NYSHRL pregnancy and religious discrimination claims must be dismissed because she cannot demonstrate either disparate treatment or a disparate impact under the Policy; 2) plaintiff's Title VII and NYSHRL failure to accommodate claims premised on her pregnancy must be dismissed because, aside from the fact that the Policy was implemented for a "non-pretextual, legitimate, non-discriminatory reason[,]" she cannot prove she was treated less favorably than non-pregnant employees; 3) plaintiff's Title VII and NYSHRL failure to accommodate claims on the basis of her religion should be denied because plaintiff's request was untimely and, even if it were timely, there is substantial evidence that the request was not made in good faith based upon sincerely held beliefs; 4) plaintiff's Title VII and NYSHRL retaliation claims should be dismissed because plaintiff cannot show that retaliation was the but-for cause of the adverse action she suffered.  Def.'s Mem., Dkt. No. 64-31 at 8–28.

Plaintiff opposes defendant's motion in all respects, arguing that: 1) she has established a *prima facie* case of discriminatory discharge on the basis of pregnancy in violation of Title VII and the NYSHRL and disputes Hamilton's contentions that she was neither qualified for her position at the time of termination nor able to demonstrate that her discharge gives rise to an

inference of discriminatory intent; 2) she has made a *prima facie* disparate impact claim for pregnancy discrimination by showing that all pregnant women who sought accommodation under the Policy were denied while others were not; 3) she has established a prima face case of failure to accommodate on the basis of pregnancy because Hamilton did accommodate others who were similarly situated; 4) defendant's Policy was not the pretextual basis for plaintiff's termination; 5) she has made a *prima facie* case of discriminatory discharge on the basis of religion and defendant has failed to demonstrate that she either lacked a sincerely held religious belief or that her request for religious believe was untimely; 6) they have sufficiently demonstrated that defendant failed to provide a religious accommodation; and 7) defendant retaliated against her for requesting an accommodation.  Pl.'s Reply Brief, Dkt. No. 77-21 at 6–35.

Before addressing the parties' substantive arguments, however, the Court notes that plaintiff has also raised an issue in their response to defendant's statement of material facts ("SOMF").  Specifically, plaintiff has called into question whether Hamilton properly filed their two supporting declarations in accordance with 28 U.S.C. § 1746 ("§ 1746").  *See* Pl.'s Reply to Def.'s SOMF, Dkt. No. 77-20 ¶ 1; *see also* Leach Decl., Dkt. No. 64-1, Stemkoski Decl., Dkt. No. 64-7.  Accordingly, in her response to defendant's SOMF, plaintiff has denied the great majority of facts set forth by Hamilton on the

- 11 -

basis of these deficient declarations.  The Court is now faced with determining whether Hamilton's SOMF, insofar as it relies upon the declarations of now-terminated defendants Karen Leach ("Leach") and Steve Stemkoski ("Stemkoski"), can properly be considered in support of their motion.

Plaintiff contends that neither the Leach nor Stemkoski declarations were "executed under penalty of perjury and do not indicate where they are signed."  *See* Pl.'s Reply to Def.'s SOMF, Dkt. No. 77-20 ¶ 1.  Hamilton did not address this issue in their reply briefing.  *See* Reply Brief, Dkt. No. 81.

"[§] 1746 provides that an unsworn matter may be treated as sworn, provided that it is "prove[n] by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, *as true under penalty of perjury*, and dated, in substantially the … form" of the model declaration provided."  *In re World Trade Center Disaster Site Litig.*, 722 F.3d 483, 488 (2d Cir. 2013) (per curiam) (quoting 28 U.S.C. § 1746) (emphasis in original); *see also LaBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 65 (2d Cir. 1999) (holding that "§ 1746 allows for unsworn declarations to be submitted to a court if it "is subscribed by [the declarant], as true under penalty of perjury, and dated, in *substantially* the following form: ... 'I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is

- 12 -

true and correct. Executed on (date). (Signature).'"); *see also Hawke v. ADK Aquatics LLC*, 2026 WL 538931 at *5 (N.D.N.Y. Feb. 26, 2026) ("To be admissible in a summary judgment proceeding, an affidavit must be sworn to," or, alternatively, a declaration made under penalty of perjury.")

"Parsing the declaration provided in the statute reveals its substantive elements: the declarant must (1) 'declare (or certify, verify, or state),' (2) 'under penalty of perjury,' (3) that the matter sworn to is 'true and correct.'" *In re World Trade Center Disaster Site Litigation*, 722 F.3d at 488. Even substituting "subject to punishment" in for "under penalty of perjury" has been held to be a "substantial departure from the substance of the declaration provided for in § 1746, and thus, does not comply with the statute. *Id.*; *see also Davis v. Grant*, 2 at *1, n.2 (S.D.N.Y. Feb. 8, 2019) ("The Second Circuit has held that the absence of the 'under the penalty of perjury' language constitutes a substantial departure from § 1746."); *see also LeBouef, Lamb, Greene, & MacRae, L.L.P.*, 185 F.3d at 65–66 (reversing summary judgment granted to plaintiff where district court excluded defendant's unsworn letter which "substantially" complied with the requirements of § 1746, because it included the language "[u]nder penalty of perjury, I make the statements contained herein," and was signed and dated, even though it did not include language that the contents of the letter were "true and correct"); *Stair v. Calhoun*, 2015 WL 1966345, at *1 (E.D.N.Y. May 1, 2015)

(finding that *pro se* plaintiff's unsworn declaration that did not include the language "true under penalty of perjury" did not meet the requirements of § 1746 because "[i]nclusion of the language 'under penalty of perjury' is an integral requirement of the statute.") (cleaned up); *Ed-George v. Burns*, 2009 WL 2957796, at \*2 (N.D.N.Y. Sept. 8, 2009) (finding that although § 1746 "requires only that a declaration [ ] 'substantially'" conform with its requirements, the words "under penalty of perjury" are "expressly required" because without them "it is far from clear to the court that [the] [p]laintiff fully appreciates the consequences, or is impressed with the solemnity of his declaration") (cleaned up).

Indeed, the "[i]nclusion of language of the language 'under penalty of perjury' is an integral requirement of the statute for the very reason that it impresses upon the declarant the specific punishment to which he or she is subjected for certifying to false statements." And "as the Fifth Circuit has observed, omission of the phrase 'under penalty of perjury' would 'allow[] the affiant to circumvent the penalties for perjury in signing onto intentional falsehoods.'" *In re World Trade Center Disaster Site Litigation*, 722 F.3d at 488 (quoting *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988)). The Second Circuit has also held that, under § 1746, it is required "that a certification of the truth of the matter be expressly made under

- 14 -

penalty of perjury" and that "[a]ny other result would be contrary to the plain language of the statute and the objective sought to be advanced by it." *Id.*

Notably, when deciding a motion for summary judgment, a court may review the entire record, including the pleadings, depositions, answers to interrogatories, admissions, affidavits, and any other evidence on file to determine whether there is any genuine issue of material fact. Fed. R. Civ. P. 56(c)(3). But Rule 56 does not "impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute." *Amnesty Am. v. Town of W. Hartford,* 288 F.3d 467, 470 (2d Cir. 2002) (collecting cases). Further, Local Rule 56.1(a) requires that the SOMF shall set forth "a short and concise statement of each material fact about which the moving party contends there exists no genuine issue" and that "[e]ach fact listed shall set forth a specific citation to the record where the fact is established." *See* N.D.N.Y. L.R. 56.1(a). The moving party's failure "to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion." *Id.*

Upon review, certain key requirements set forth *supra* are not present in defendant's declarations. While the Leach and Stemkoski declarations state that they are made "pursuant to 28 U.S.C. § 1746" and are signed and dated by the declarant, they do not declare, certify, verify, or state under penalty of perjury that the matter sworn to is true and correct. *See* Leach Decl., Dkt.

- 15 -

No. 64-1; *see also* Stemkoski Decl., Dkt. No. 64-7.  Nor has defendant shed any light as to the absence of the required elements for declarations in their briefing for this Court's consideration.  *See* Reply Brief, Dkt. No. 81. Accordingly, the Leach and Stemkoski declarations will not be considered.

Given that a significant portion of the defendant's SOMF cites only to the declarations that the Court will not take into consideration, defendant has failed to meet their burden under Rule 56(c) and their motion must be dismissed pursuant to the Local Rules.  And even if the Court were to accept Hamilton's declarations, it still finds that plaintiff tends to show genuine issues of material fact as to her claims.

While the Court will not delve into the record to evaluate each of plaintiff's claims or highlight each genuine issue of material fact that exists, plaintiff's filings do tend to show genuine issues of material fact exist as to whether, under the Policy, pregnant employees seeking accommodations for medical reasons were treated differently than non-pregnant employees.  As stated *supra*, Hamilton seeks to dismiss plaintiff's pregnancy discrimination and failure to accommodate claims under Title VII and the NYSHRL, asserting that Colangelo fails to provide any direct evidence to show Hamilton acted with discriminatory motive in denying her accommodation request or any indirect evidence of their discriminatory intent.  Defendant asserts that Colangelo has neither carried her burden to show she was qualified for her

position at the time of her termination nor met her burden of showing that Hamilton lacked a "non-pretextual, legitimate, non-discriminatory reason for terminating [p]laintiff's employment." Def.'s Mem., Dkt. No. 64-31 at 11–19. Defendant also contends that plaintiff has not demonstrated that the Policy had an adverse impact on pregnant employees. In Hamilton's view, 1) they implemented a legitimate, non-discriminatory Policy; 2) when plaintiff failed to obtain the COVID-19 vaccine by August 26, 2021 as was required under the Policy, she was no longer qualified for employment; and 3) plaintiff's employment was properly terminated for failing to comply with the Policy. *See generally id.*

Plaintiff has alleged that she was treated less favorably than other non-pregnant co-workers when she sought accommodation until completing her pregnancy. *Supra.* She asserts that other, non-pregnant employees seeking accommodations for medical reasons succeeded in doing so with nothing more than a doctor's note in support of their request. *Id*

"'In 1978, Congress enacted the Pregnancy Discrimination Act' [("PDA")], which amended Title VII to protect employees from pregnancy discrimination." *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 103 n. 2 (2d Cir. 2019) (quoting *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 212 (2015)). "The [PDA] makes clear that Title VII's prohibition against sex discrimination applies to discrimination based on pregnancy." *Id.* (quoting *Young*, 575 U.S.

at 210).  Under the PDA, employers must "treat women affected by pregnancy … the same for all employment-related purposes … as other persons not so affected but similar in their ability or inability to work." *Young*, 575 U.S. at 210 (quoting 42 U.S.C. § 2000e(k)).  Thus, under the PDA "it is discriminatory to treat pregnancy-related conditions less favorably than other medical conditions." *LaBarbera v. NYU Winthrop Hospital*, 527 F. Supp. 3d 275, 289 (E.D.N.Y. 2021) (quoting *Legg v. Ulster Cty*, 802 F.3d 67, 72 (2d Cir. 2016)) (cleaned up).

Colangelo asserts that defendant granted every other request to non-pregnant employees for an accommodation on medical grounds aside from hers.  Pl.'s Reply to Def.'s SOMF ¶ 127–28.  In support, plaintiff points to multiple comparator employees who obtained an accommodation from defendant.  *Id*. ¶¶ 130–136.  While plaintiff did not submit a doctor's note in support of her request for medical accommodation, plaintiff asserts that comparator employee EE9 was granted an accommodation without defendant ever producing a doctor's note in discovery in support of that employee's request.  *Id*. ¶¶ 113, 138.  Although defendant argues that employees were required to complete a medical exemption request form and provide documentation from a medical provider in support of their request, Colangelo asserts that Hamilton failed to provide her with all of the necessary paperwork to make an exemption request.  *Id*. ¶ 13.

In addition, while defendant contends that the deadline for employees to submit their requests for accommodation was August 7, 2021, plaintiff has provided facts to suggest both that there was broad confusion surrounding the actual deadline to submit an accommodation request and that other employees were granted additional time to submit such request while her request was denied as untimely. Def.'s SOMF ¶ 10; Pl.'s Reply to Def.'s SOMF ¶¶ 10, 53; *see also* Stemkoski Dep., Dkt. No. 77-6 at 59:1–61:12. With respect to plaintiff's religious discrimination claims, she has alleged that at least one comparator employee, EE12, was granted accommodation despite also submitting an untimely request. *Id.* ¶¶ 10, 64, 139, 148–150. There also appear to be factual issues between the parties as to whether plaintiff held a sincerely held religious belief in support of her religious exemption request.

Plaintiff has also introduced certain Equal Employment Opportunity Commission ("EEOC") guidance which advises that pregnant employees may be entitled to "job modifications, including telework" and that "[e]mployers should ensure that supervisors, managers, and human resources personnel know how to handle such requests to avoid disparate treatment in violation of Title VII." *See e.g.*, Pl's Opp'n. Mem., Dkt. No. 77-21 at 10; *see also* EEOC Guidance, Dkt. No. 77-22 at 38–39, 50–51.

Nonetheless, defendant has not met their burden under Rule 56, and their SOMF does not comply with the Local Rules in this District.  For that reason, their motion will be denied.

## V.  <u>CONCLUSION</u>

For the foregoing reasons, the Court finds that the issues set forth in Hamilton's motion have not been adequately briefed for the Court to rule on the merits of the motion.

Therefore, it is

ORDERED that

1.  Hamilton's motion for summary judgment (Dkt. No. 64) is DENIED;

The Clerk of the Court is further directed to terminate the pending motion and update the case caption as directed above.

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated:  June 12, 2026
        Utica, New York.

- 20 -